FILED

2016 Nov-14  PM 04:20
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **HOUSTON, CRYSTAL,** <br> **an individual,** | ) <br> ) <br> ) <br> ) **Civil Action No.: _____** |
| **Plaintiff,** | ) <br> ) |
| **v.** | ) <br> ) **DEMAND FOR JURY TRIAL** |
| **CITY OF TALLADEGA, a** <br> **Municipal Corporation;** <br> **DANIEL CHESSER, an** <br> **individual, E R I C  D E A N , an** <br> **individual, JASON BUSBY, an** <br> **individual, LARRY BARTON,** <br> **an individual** <br> **Defendants.** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

---

# C O M P L A I N T

---

### *Introduction*

COMES  NOW  Plaintiff,  Crystal Houston , who shows  the court  the

following:

*Parties*

1.   Plaintiff incorporates each and every allegation above as if fully stated herein.

2.   Plaintiff, **Crystal Houston** is a female citizen of the State of Alabama who was a competent adult at the time of the challenged actions ("Plaintiff' or "Ms. Houston").

3.   Defendant, **City of Talladega,** is a municipal corporation in Birmingham, Alabama, and which duly organized the Talladega City Police Department and the police department's policies and procedures governing the duties and actions of its police officers. ("the City" or "Talladega")

4.   Defendant, **Daniel Chesser,** is an individual who on November 14, 2014, was working in the line and scope of his duties as a K-9 police officer for the City of Talladega Police Department. He is sued in his individual capacity only.   ("Officer Chesser" or "Chesser")

5.   Defendant, **Eric Dean,** is an individual who on November 14, 2014, was working in the line and scope of his duties as a police officer for the City of Talladega Police Department. He is sued in his individual capacity only.   ("Officer Dean" or "Dean")

~ 2 ~

6.   Defendant, **Chief Jason Busby** is an individual who on November 14, 2014, was working in the line and scope of his employment as the Chief of Police with the Talladega Police Department. Busby is sued in his individual capacity only. ("Chief Busby" or "Busby")

7.   Defendant, **Mayor Larry Barton** is an individual who on November 14, 2014, was working in the line and scope of his employment as the Mayor of Talladega. Barton is sued in his individual capacity only. ("Mayor Barton" or "Barton")

8.   All of the named Defendants, except the City of Talladega, are sued individually for damages, and are sued individually and jointly for proximately causing one or more deprivations of rights and injuries to Plaintiff.

### *Jurisdiction*

9.   The court has original jurisdiction of Plaintiff's federal claims in this matter pursuant to *28 U.S.C. §§ 1331* and *1343(a)(3).* Also, the court has supplemental jurisdiction over Ms. Houston's state law claims pursuant to *28U.S.C. §1367(a).* Venue is proper pursuant to *28 U.S.C. 1391.*

### *42 U.S.C. §§ 1983 and 1988, Constitution of the U.S., Common Law of the State of Alabama*

10.   This is a civil action for money damages brought pursuant to:

~ 3 ~

    a)   42 U.S.C. §§ 1983 and 1988;

    b)   The Fourth and Fourteenth Amendments to the United States Constitution, and

    c)   Alabama law

### *Color of State Law*

11. At the time of all relevant events, all defendants were acting under color of state law, that is, they were acting under the color of the statutes, regulations, policies and customs of the State of Alabama and/or the City of Talladega.

### *Factual Summary of Events*

12.    On November 14, 2014, Ms. Houston had been to visit her mother in Lineville, Alabama.

13.    She was driving back home to Talladega, Alabama, that evening and entered the city limits of Talladega.

14.    When she was about a mile away from her house she saw police lights behind her vehicle.

15.    Houston became afraid because she had consumed alcoholic beverages earlier that evening and decided to drive on to her house and to let the

police officer follow her to her home and he could deal with her there.

16.     Houston did not speed up or attempt to escape or try to elude the officer. However, she did not immediately pull over and, instead, she drove approximately one mile to her house and pulled into her driveway and came to a complete stop.

17.     Defendant Dean was the Talladega police officer who turned the emergency lights on behind Plaintiff and followed her to her house.

18.     At Houston's house, Defendant Dean parked his police vehicle on the street in front of her house.

19.     Dean was very agitated when he approached Houston in her driveway.

20.     Dean told Houston to show her license and registration and to get out of the car.

21.     Houston always kept her vehicle registration in the visor of her vehicle and she reached above the visor, retrieved her registration and opened the door and got out in compliance with Dean's orders.

22.     After Houston got out of the car, Dean grabbed Houston and threw her down to the ground.

23.     Almost immediately after Dean threw Plaintiff to the ground, a Talladega police canine unit dog named Andor bit down on Plaintiff's arm.

24.     The dog, Andor, was assigned to Defendant Chesser, a designated Talladega canine unit police officer.

25.     Chesser had arrived at Houston's house at or about the same time that Dean did and immediately sicked Andor onto Ms. Houston.

26.     Houston was not resisting, running, or failing to comply with Dean's orders at any time after she arrived at her house and got out of the car as Dean ordered her to do.

27.     Chesser sicked Andor on Houston without any probable cause to do so.

28.     Several other police officers arrived after Dean called for backup when Plaintiff did not immediately pull over.

29.     Plaintiff screamed and yelled for someone to get Andor off of her as it maintained its bite on her arm and as it continued to bite down on her arm for an extended time.

30. A female police officer told Houston to calm down and that if she would be still and quiet the dog would let go of her arm.

31.     Chesser waited an unnecessarily long time to command Andor to let go of Houston's arm, but even then, Andor did not follow Chesser's commands and it took several more seconds for Chesser to physically get Andor to let go of Houston's arm.

32.     Houston suffered serious bite wounds and injuries to her arm due to the attack.

33.     Houston was taken from the scene to Citizens Hospital by ambulance and received treatment for her dog bite wounds.

34.     Houston was charged with minor misdemeanors for failure to display insurance, driving while license revoked, speeding and resisting arrest.  Several days later, Houston was charged with driving under the influence relating to this incident.

35.     Chesser unreasonably sicked Andor on Houston even though Houston immediately complied with Dean's orders once she stopped her car at her house and got out with her registration papers when ordered to do so.

36. Chesser and Dean were in a position to immediately effectuate Houston's arrest without any use of force at her house.

37.    Dean unreasonably used force to throw Houston to the ground while she was compliant and attempting to follow orders on this misdemeanor stop.

38.    Defendant Dean witnessed the unreasonable canine force that Defendant Chesser and Andor inflicted upon Plaintiff during her arrest via the dog's unnecessary and prolonged attack of Plaintiff.

39.    Defendant Dean was in a position to intervene and stop the excessive use of force that occurred during Plaintiff's arrest and failed to do so.

40.    The City of Talladega through the Talladega Police Department, had a canine unit program in place for several years prior to the incident with Houston on November 14, 2014.

41.    The City of Talladega, through the Talladega Police Department, had in place written policies and procedures establishing the required canine unit training and monitoring for all canine unit officers and dogs;  the limited circumstances where canine units were allowed to be deployed in apprehending suspects; the frequency of required evaluation, monitoring, training and re-training of canine unit officers and dogs necessary to operate the canine unit within constitutional parameters, etc.

42.    The Talladega Police Department's written policies and

procedures required that the canine unit only be deployed in those circumstances where there was a felony suspect who represented a high risk of injury to the public, officers or others.

43.   The Talladega Police Department's written policies and procedures required that the canine unit only be deployed to apprehend fleeing felony suspects, hiding felony suspects, or concealed felony suspects.

### *Municipal Liability*

44**.**   Chief Busby, or alternatively, Mayor Barton, were the final decision makers for law enforcement policies, practices, and customs for the City of Talladega. In particular, Busby or Barton had final decision making authority over the manner in which Talladega canine units were trained and  supervised, and for the unit's practices in the apprehension of suspects.

45.   Chief Busby, or alternatively, Mayor Barton, created and/or approved an oral policy or custom that the canine unit could be deployed to apprehend misdemeanor suspects.

46.   Chief Busby, or alternatively, Mayor Barton, approved, created, and/or ratified oral policies or customs that amounted to the failure to train and supervise the constitutional use of canine force used by members of the Talladega Police Department.

47.   Chief Busby, as the highest ranking supervisor within the Talladega Police Department, had specific knowledge that Chesser and his canine were acting outside of policy and applicable law regarding search and seizure. Depsite this knowledge, Busby failed to train and supervise Chesser regarding his frequently reported unconstitutional use of canine force; violations of Talladega's written policies and procedures regarding the canine unit deployment on suspects; and violations of established search and seizure law.

48.   Prior to November 14, 2014, City policy and applicable police standards required that in order to train members of the Talladega canine unit, Chesser and Andor were required to complete an extensive training course relating to obedience and police work.

49.   Prior to November 14, 2014, the standard for police canine units was to train the dogs to "bite and hold" if commanded to do so by its handler, and to continue to bite and hold until countermanded by the handler.

50.   Injury to a suspect is inevitable when a canine employs the bite and hold function.

51.   A canine unit dog is trained to maintain the bite and hold until countermanded by the handler.

~ 10 ~

52.   Prior to November 14, 2014, police canine unit training standards required that the handler have complete control over the dog in order to avoid situations where a dog may bite suspects unnecessarily, and to avoid situations where a police dog refused to let go of their bite when commanded to do so. The purpose of both of these training standards is to minimize incidents where police dogs bite suspects, and minimize injuries caused by dog bites.

53.   Prior to November 14, 2014, police canine unit standards adhered to the principle that the responsiveness of well-trained canine unit dogs will erode over time and continual evaluation, and that monitoring and training of police dogs was necessary to ensure that they will perform responsibly.

54.   Prior to November 14, 2014, police canine unit standards required that strict performance monitoring be conducted on canine units to ensure that dogs responded to commands and that handlers acted appropriately in controlling their dogs in the field.

55.   Prior to November 14, 2014, the Talladega Police Department did not have in place specialized internal procedures to monitor the performance of its canine unit.

56.   Prior to November 14, 2014, Chesser and Andor were the

subject of numerous incidents where Chesser unnecessarily deployed Andor to apprehend misdemeanor suspects in violation of City of Talladega's written policies, and in violation of well-known constitutional principles under the Fourth Amendment to the United States Constitution.

57.   Prior to November 14, 2014, Mayor Barton and Chief Busby, the final decisions makers regarding the City of Talladega Police Department polices and customs, were made aware that Chesser and Andor were in need of re-training and supervision due to numerous citizen complaints and complaints from other Talladega police officers regarding this canine unit's unnecessary use of force against ordinary citizens.

58.   For example, on August 5, 2014, approximately three months before the incident made the subject of this complaint, another Talladega police officer and former canine unit officer, Sgt. Marco Williams, notified his superior officers Captains Leon Thomas and John McCoy, that due to inappropriate deployment of Andor in recent misdemeanor calls, Chesser required remedial training on the Talladega canine unit policy.

59.   Sgt. Williams specifically recommended to Captain King

that Chesser be suspended from any further canine apprehension deployments until he could demonstrate under similar conditions that he and his dog could reliably act within the appropriate standards for canine unit training.

60. Sgt. Williams specifically recommended to Captain King that  Chesser be suspended from any further canine apprehension deployments until he could demonstrate that he understood the Talladega Police Department rules and regulations concerning use of force and concerning deployment of the canine unit, as well as and the relevant case law of search and seizure.

61.  Sgt. Williams specifically reported to Captain King that during Williams' investigation into prior incidents involving Chesser's deployment of Andor against misdemeanant suspects, he discovered that Chesser hid from his superiors at the Talladega Police Department those problem areas with his canine unit, which included his dog's lack of responsiveness to Chesser's commands.

62. Sgt. Williams also documented to his and Chesser's superiors that Chesser failed to document Andor's aggressive behavior in his use of force reports, and that Chesser omitted facts concerning Andor's aggressive behavior when asked during post-

incident investigations.

63.   Sgt. Williams reported to Captain Thomas on August 5, 2014, that during his questioning of Chesser about a prior incident where Chesser deployed Andor during a misdemeanor call in violation of the written rules and regulations at the Talladega Police Department, that Chesser gave "incorrect and vague reports" that Chief Busby had cleared Chesser to use the canine Andor for apprehension of misdemeanor violators.

64.   Upon information and belief, all of Sgt. Williams' concerns about Chesser and the Talladega canine unit as contained in his report to Captain Thomas and as was reported to several other supervisory officers at the Talladega Police Department were specifically provided to Chief Busby and/ or Mayor Barton prior to November 14, 2014.

65.   Chief Busby and/or Mayor Barton were  specifically aware of the concerns expressed by Sgt. Williams relating to Chesser and his canine unit dog and their need for closer supervision, re-training and disciplinary action.

66.   Prior to November 14, 2014, Chief Busby and/or Mayor Barton were specifically aware that Chesser and Andor frequently

committed excessive force to apprehend individuals suspected of only misdemeanor violations.

67.   Prior to November 14, 2014, Chief Busby and/or Mayor Barton were  specifically aware that Chesser and Andor were likely to commit unconstitutional deprivations of ordinary citizens' rights --- namely to be free from unnecessary and excessive force --- unless Chesser was given adequate training in the constitutional use of canine force in apprehending suspects.

68.   Chief Busby and Mayor Barton also were aware that Andor was not responding to Chesser's commands when deployed, and that Chesser was exercising bad judgment in the use of canine force and required corrective training.

69.   Chief Busby and Mayor Barton were aware that unless Chesser and Andor received additional training in the constitutional use of canine force as recommended by Sgt. Williams, that ordinary citizens like Plaintiff would likely suffer violations of their constitutional rights due to unnecessary use of canine force.

70.   Chief Busby and/or Mayor Barton ignored Sgt. Williams' recommendations that Chesser be re-trained and also ignored Sgt. Williams' recommendation that Chesser be disciplined for his

violation of Talladega's rules and regulations regarding the deployment of canine units, as well as constitutional law.

71.    Chief Busby and/or Mayor Barton failed to take any action whatsoever.

72.    Chief Busby and/or Mayor Barton's failure and inaction to train, supervise and discipline Chesser for routinely deploying his canine in an unconstitutional manner constituted a policy or custom of failure to train canine unit officers at Talladega Police Department.

73.    Chief Busby and/or Mayor Barton's failure to re-train and/or discipline Chesser for the deployment his canine in violation of known police canine force standards and Talladega written rules and regulations constituted a policy or custom of failure to train canine unit officers at Talladega Police Department.

74.    Chief Busby and/or Mayor Barton's failure to re-train Andor when it they knew that Andor was not responsive to Chesser's commands constituted a policy or custom of failure to train canine unit animals at Talladega Police Department.

75.    The policies or customs regarding the failure to train Chesser as described in the preceding paragraphs constituted

deliberate indifference because they inflicted more frequent and serious injuries to misdemeanor suspects than would otherwise occur.

76. The policies or customs of failure to train Chesser as described in the preceding paragraphs constituted deliberate indifference because they created a substantially higher likelihood that misdemeanor suspects like Plaintiff would suffer constitutional deprivations and physical injuries due to unnecessary canine force.

77. The policies or customs of failure to require more training to Andor as described in the preceding paragraphs constituted deliberate indifference because they placed misdemeanor suspects like Plaintiff at risk of known and expected injuries than would otherwise not occur during normal citations and arrests of misdemeanants.

78. These deliberately-indifferent customs and policies of failure to train were known to Chesser and were authorized and implemented by Chief Busby, or in the alternative, Mayor Barton and their subordinates.

79. Plaintiff was compliant and obeyed Dean's orders when she stopped her car at her house and got out of the car with her registration papers as ordered by Dean.

80.    Despite Plaintiff's compliance, her efforts to follow orders, and her status as a mere misdemeanor suspect who posed no threat of harm to any officer or member of the public, Plaintiff was attacked by Andor at Chesser's command without any reasonable justification.

81.    Despite Plaintiff's compliance, her efforts to follow orders, and her status as a mere misdemeanor suspect who posed no threat of harm to any officer or member of the public, Plaintiff was bitten by Andor and continued to be bitten by Andor long after Chesser commanded Andor to release Plaintiff.

82.    Defendants Chesser and Dean's unconstitutional uses of force toward Plaintiff were motivated by malice and/or involved a reckless and callous indifference to Plaintiff's constitutional right to be free from the unreasonable use of force during a misdemeanor arrest.

83.    The force used by Defendant Chesser was objectively unreasonable and unnecessary for Defendant C h e s s e r  to  defend  e i t h e r  himself  or D e f e n d a n t  D e a n  o r  any other person from bodily harm during the arrest of Plaintiff, and occurred while Plaintiff was neither resisting nor fleeing.

84.    The force used by Defendant Dean was objectively unreasonable and unnecessary for Defendant D e a n  to defend himself or any other person from bodily harm during the arrest of Plaintiff, and occurred while Plaintiff  was neither

resisting nor fleeing.

85.   The force used by Defendants Chesser and Dean was objectively unreasonable and constituted the excessive use of force, in violation of Plaintiff's clearly established constitutional rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

86.   Defendant Dean had a duty to intervene and stop the excessive use of force by Chesser and Andor that occurred during Plaintiff's arrest and failed to do so. *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998).

87.   Defendant Dean's failure to intervene to stop Chesser and the canine unit dog, Andor's, unreasonable use of force inflicted upon Plaintiff during her arrest via the dog's unnecessary and prolonged attack of Plaintiff violated Plaintiff's clearly established constitutional rights under the Fourth and Fourteenth Amendments and 42 U.S.C.§1983. *Priester v. City of Riviera* Beach, 208 F.3d 919, 927 (11th Cir. 2000).

88. As a direct and proximate result of the conduct of Defendants Chesser, individually, and Dean, individually, Plaintiff suffered bodily injury, pain and suffering, disability, disfigurement, mental anguish, expense of hospitalization, and medical care and treatment. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

89.   Defendant Busby, or in the alternative, Mayor Barton, are individually

liable to Plaintiff for violating Plaintiff's right from being free from excessive force as described above.

90.     Defendant Chesser is a subordinate of defendant Busy and/or Mayor Barton, and Chesser violated Plaintiff's Fourth Amendment Rights to be free from the unreasonable use of force, including K9 force.

91.     At the time that Chesser and his canine Unit were deployed and caused injury to Plaintiff on November 14, 2014, there was history of widespread abuse that was obvious, flagrant, rampant and of continued duration involving the deployment of the canine Unit on misdemeanor suspects who were not fleeing and/or who were not threatening harm to any officer or other person.

92.     Defendant Busby, or alternatively, Mayor Barton, were on notice of this widespread abuse and of the need to take corrective action and Defendant Busy or in the alternative Mayor Barton, failed to do so.

93.     The City of Talladega, through its final policy makers, Defendant Busby, or in the alternative, Mayor Barton, implemented an official policy or custom to allow the use of the Talladega canine unit to apprehend misdemeanor suspects even when those suspects were following orders, not resisting, and were not threatening harm to any officer or any other person. This policy or custom resulted in Chesser acting with deliberate indifference and reckless disregard to Plaintiff's Fourth Amendment Right to be free from the unreasonable use of force.

94.    Defendant Busby, or in the alternative, Mayor Barton, implemented an official or unofficial policy or custom for the failure to train and/or supervise Chesser and the canine unit dog as described herein.

95.    As a result of the City of Talladega's implementation and/or ratification of official and unofficial policies and customs described herein, Chesser acted with deliberate indifference and reckless disregard to Plaintiff's Fourth Amendment Right to be free from the unreasonable use of force.

96.    The City of Talladega and Defendant Busby knew or should have known that Chesser would have taken this action against Plaintiff and failed to stop Chesser from doing so, failed to train or retrain Chesser from doing so, and failed to supervise and discipline Chesser to prevent him from doing so.

## COUNT I
### *Excessive Use Of Force Claim Under  42 U.S.C. § 1983*

97.    Plaintiff re-alleges the Statement of Facts above as if fully set out herein.

98.    The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures.

99.    Defendants' use of force against Plaintiff as described in this Complaint constituted a "seizure" under the Fourth Amendment.

100.    All Defendants' use of force against Plaintiff was intentional and

objectively unreasonable under the circumstances, in violation of the Fourth Amendment.

101.   The individual Defendants' violations of Plaintiff's Fourth Amendment rights were committed with malice or reckless indifference to those rights.

102.   The City, Chief Busby or Mayor Barton  violated of Plaintiff's Fourth Amendment rights by their actions and inactions when they created and or ratified those policies and customs to allow the Talladega canine unit to use unconstitutional canine force to apprehend  misdemeanants, including Plaintiff. Those policies and customs to fail to train and supervise the City's canine units, including Chesser,  and to ratify Chesser's actions, created a causal connection between Busby or Barton's actions and inaction as the final decision makers for the City and the constitutional deprivations suffered by Plaintiff in this matter.

103.   As a result of the conduct of the Defendants' actions and inactions to cause Plaintiff to suffer deprivation of her federally protected rights descried above, Plaintiff suffered physical and emotional injuries which required medical treatment, caused her to incur medical bills and left her with permanent scars and disfigurement.

## Count II

### *State Law – City of Talladega's Liability under Ala.Code 11-47-190*

104.   Plaintiff re-alleges and re-affirms all the averments in the Statement of Fact of this Complaint as if fully set forth herein.

105.   At all times described above, each of the Defendants except the City of Talladega were acting as agents, officers and/or employees of the City of Talladega and were engaged in work therefore and were acting in the line of their duties.

106.   As agents, officers and employees of  the City of Talladega, each of the named individual Defendants had a duty to use due care and skill in conducting traffic stops, detaining ordinary citizens and suspects, observing the rights of suspects and citizens, and utilizing canine units to apprehend suspects.

107.   Each of the individual Defendants as agents, officers and employees of the City of Talladega breached those duties and acted with neglect, carelessness and/or unskillfulness in apprehending Plaintiff.

108.   The neglect, carelessness and/or unskillfulness described in the preceding paragraphs proximately caused Plaintiff to be injured and damaged as described above, which includes but is not limited to the following:

       a) bite wounds to her arm;

       b) medical bills and charges;

       c) mental anguish and suffering

d) pain and suffering

e) permanent injuries.

## COUNT III

### *State Law - The Individual Defendants Liability for Negligence and Wantonness*

109.   Plaintiff re-alleges and re-affirms all the averments in the Statement of Fact of this Complaint as if fully set forth herein.

110.   Each of the named individual Defendants acting in their individual and personal capacity, had a duty to use reasonable care, follow all laws of the state, and act within the laws of United States Constitution and the Constitution of the State of Alabama and follow all constitutional policies of the Talladega Police Department when conducting traffic stops, detaining ordinary citizens and suspects, observing the rights of suspects and citizens, and utilizing canine units to apprehend suspects.

111.   Each of the individual Defendants as agents, officers and employees of the City of Talladega breached those duties and acted with neglect, carelessness and/or unskillfulness in apprehending Plaintiff.

112.   The negligent and wanton conduct of each of the Defendants described above caused unreasonably canine force to be perpetrated upon Plaintiff

in violation of her state and federally protected rights as an ordinary citizen, particularly to be free from the unreasonable use of force.

113.   The wrongful conduct of the individual Defendants described above, proximately caused Plaintiff to be injured and damaged as described above which includes but is not limited to the following:

a) bite wounds to her arm;

b) medical bills and charges;

c) mental anguish and suffering

d) pain and suffering

e) permanent injuries.

### *Nature of the Relief Sought*

114.   Plaintiff requests and seeks judgment against one or more Defendants individually or jointly for the following:

a.    all compensatory and punitive damages as allowed by state and federal law;

b.    any special damages as allowed by state and federal law, as more  particularly as shown as trial;

c.    damages for injuries caused by the deprivation of the constitutional rights under the United States Constitution;

d.      damages as allowed under Alabama law as the facts are shown;

e.      punitive damages against each individual Defendant under federal law (not including the City);

f.      reasonable attorney fees, costs and expenses of litigation under 42 U.S.C. § 1988;

g.      any injunctive and declaratory relief to which Plaintiff may be entitled;

h.      any other and further relief so ordered.

Dated on this the 14th day of November, 2016

Respectfully submitted,

*/s/Alan B. Lasseter*
ALAN B. LASSETER

LASSETER LAW FIRM, P.C.
2100 Morris Avenue
Birmingham, AL 35203
Telephone:  (205)322-1411
Email: alan@lasseterlaw.com

JURY DEMAND

**Plaintiff hereby demands a struck jury for the trial in this cause.**

~ 26 ~

<u>CERTIFICATE OF SERVICE</u>

I, Alan Lasseter, certify that on November 14, 2016, I electronically

served this document, via certified mail via the Clerk of the Court, upon:


City of Talladega
C/o City Clerk
203 South Street West
Talladega, Alabama 35160

Officer Daniel Chesser
Talladega Police Department
203 South Street West
Talladega, Alabama 35160

Officer Eric Dean
Talladega Police Department
203 South Street West
Talladega, Alabama 35160

Chief Jason Busby
Talladega Police Department
203 South Street West
Talladega, Alabama 35160

Mayor Larry Barton
1024 Shady Lane Circle
Talladega, Alabama 35160


*/s/ Alan Lasseter*
Alan B. Lasseter